United States District Court

Eastern District of Michigan

Southern Division


United States of America,

                   Plaintiff,

v.

Funds in Fidelity Investment Account
No. 637-409820 held in the name of
Rajendra Bothra (approximately
$12,195,220.59);

$129,123.96 U.S. Currency in
Comerica Bank Account No.
0013166764 in the names of Rajendra
and Pramila Bothra;

$1,100,460.30 U.S. Currency in
Comerica Bank Account No.
1852393634 in the name of The Pain
Center USA, PLLC;

$102,686.96 U.S. Currency in
Comerica Bank Account No.
6822878135 in the names of Rajendra
and Pramila Bothra;

$19,607.44 U.S. Currency in Comerica
Bank Account No. 6825289306 in the
names of Ronald and Mary Kufner;

$74,333.55 U.S. Currency in Comerica
Bank Account No. 6826050475 in the
name of David Lewis Jr.;

Case No.

Hon.


**<u>Demand for Jury Trial</u>**

$30,959.44 U.S. Currency in Comerica Bank Account No. 6825289462 in the names of Ronald and Mary Kufner;

$4,501,200.15 U.S. Currency in Comerica Bank Account No. 9416234848 in the name of Interventional Pain Center, PLLC;

$337,080.87 U.S. Currency in Comerica Bank Account No. 1852973666 in the name of Kaiser Real Estate, LLC;

$5,704.75 in Funds from Bank of America Account No. 2269017298 in the name of Eric and Alcesa Backos;

Funds in Fidelity Investments Account No. 169-421650 in the name of Eric and Alcesa Backos (approximately $384,006.23);

Funds in Fidelity Investment Account No. 627-006648 in the name of Rajendra Bothra (approximately $4,633,351.67);

Funds in Fidelity Investment Account No. 645-125105 in the name of Rajendra Bothra (approximately $20.40);

Funds in Fidelity Investment Account No. 675-597678 in the name of Sonia Bothra (approximately $97,417.25);

Funds in Fidelity Investment Account No. 637-299600 in the name of The

Pain Center USA, PLLC
(approximately $553,663.69);

$1,095,860.05 U.S. Currency in
Comerica Bank Account No.
1851508240 in the name of The Pain
Center USA, PLLC;

$579,307.63 U.S. Currency in
Comerica Bank Account No.
1853038691 in the name of
Interventional Pain Center, PLLC;

$19,690.26 in Funds from Bank of
America Account No. 5404770967 in
the name of Christopher Russo;

$22,455.12 in Funds from Bank of
America Account No. 195039782 in the
name of Eric and Alcesa Backos;

All funds due and owing to Dr. Bothra,
The Pain Center USA, PLLC, and/or
Interventional Pain Center, and
received by the law firm of Rodnick
Unger, P.C. obtained in settlement of
past, pending, or future civil lawsuits;

100 W. 5th Street #810, Royal Oak, MI
48067;

111 N. Main Street, #205, Royal Oak,
MI 48067;

111 N. Main Street, #302, Royal Oak,
MI 48067;

315 W. 6th Street, Royal Oak, MI
48067;

321 W. 6th Street, Royal Oak, MI 48067;

350 N. Main Street, #708, Royal Oak, MI 48067;

615-617 S. Washington, Royal Oak, MI 48067;

619 S. Washington, Royal Oak, MI 48067;

621 S. Washington, Royal Oak, MI 48067;

623 S. Washington, Royal Oak, MI 48067;

27715 Grant Street, St. Clair Shores, MI 48081;

22480 Kelly Road, Eastpointe, MI 48021;

27379 Van Dyke, Warren, MI 48093;

28000 Van Dyke, Warren, MI 48093;

27423 Van Dyke, Warren, MI 48093;

27253 Van Dyke, Warren, MI 48093;

27333 Van Dyke, Warren, MI 48093;

700-704 S. Washington, Royal Oak, MI 48067;

27402 Seyburn, Warren, MI 48092;

27414 Seyburn, Warren, MI 48092;

27426 Seyburn, Warren, MI 48092;

27438 Seyburn, Warren, MI 48092;

27330 Seyburn Ave., Warren, MI 48092;

27342 Seyburn Ave, Warren, MI 48092;

Funds from Cashier's Check issued by Comerica Bank, dated April 12, 2019, paid to the order of Interventional Pain Center PLLC in the amount of Two Dollars and Sixty Seven Cents in U.S. Currency ($2.67);

Funds from Cashier's Check issued by Comerica Bank, dated April 12, 2019, paid to the order of The Pain Center USA PLLC in the amount of Sixty Eight Thousand Three Hundred and Eighty One Dollars and Sixty Four Cents in U.S. Currency ($68,381.64).

Defendants *in rem*.

---

## Complaint for Forfeiture

---

Plaintiff, the United States, by and through Matthew Schneider, United States Attorney for the Eastern District of Michigan, and Shankar Ramamurthy, Assistant United States Attorney, states upon information and belief in support of this Complaint for Forfeiture as follows:

1.     Beginning in or about January 2013 and continuing through in or about November 2018, Dr. Rajendra Bothra, Dr. Eric Backos, Dr. David Lewis, Dr. Christopher Russo, and Dr. Ronald Kufner, and others, each associated with The Pain Center USA, PLLC, and Interventional Pain Center, PLLC (together referred to as "Pain Center"), created and executed a scheme or pattern of illegal conduct involving fraudulent health care billings and unlawful prescribing of prescription drug controlled substances.

2.     During the fraud scheme, Pain Center and its physicians submitted or caused the submission of claims for reimbursements for more than $182.5 million to Medicare, $272.6 million to Medicaid, and $9.2 million to Blue Cross and Blue Shield of Michigan ("Blue Cross" or "BCBS"), for services and equipment that was medically unnecessary, not eligible for reimbursement, and/or not provided as represented. Pain Center and its doctors were also responsible for issuing more than 13,217,987 dosage units of Schedule II opioids over the course of the conspiracy.

3.     Pain Center and its doctors obtained Medicare reimbursements as the proceeds of their fraud scheme, which were subsequently involved in money laundering transactions. Each of Defendants *in rem* are subject to forfeiture as a result of this fraud scheme.

4.      This is an *in rem* civil forfeiture action pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and/or (a)(1)(C), and Title 21, United States Code, Section 881(a).

5.      This Court has original jurisdiction over this forfeiture action pursuant to Title 28, United States Code, Section 1345 as this action is being commenced by the United States of America as Plaintiff.

6.      This Court has jurisdiction over this forfeiture action, pursuant to Title 28, United States Code, Section 1355(b)(1)(A), as the acts giving rise to forfeiture occurred in the Eastern District of Michigan.

7.      Venue is proper before this Court pursuant to Title 28, United States Code, Section 1391(b)(2) as a substantial part of the events or omissions giving rise to the Plaintiffs claims occurred in the Eastern District of Michigan.

8.      Venue is also proper before this Court pursuant to Title 28, United States Code, Sections 1395 (a) and (b) as the action accrued and/or the Defendants *in rem* were found and seized in the Eastern District of Michigan.

### Defendants *In Rem*

9.      The Defendants *in rem* consist of the following:

    a.      Funds in Fidelity Investment Account No. 637-409820 held in the name of Rajendra Bothra (approximately $12,195,220.59);

    b.      $129,123.96 U.S. Currency in Comerica Bank Account No. 0013166764 in the names of Rajendra and Pramila Bothra;

c.      $1,100,460.30 U.S. Currency in Comerica Bank Account No.
        1852393634 in the name of The Pain Center USA, PLLC;

d.      $102,686.96 U.S. Currency in Comerica Bank Account No.
        6822878135 in the names of Rajendra and Pramila Bothra;

e.      $19,607.44 U.S. Currency in Comerica Bank Account No.
        6825289306 in the names of Ronald and Mary Kufner;

f.      $74,333.55 U.S. Currency in Comerica Bank Account No.
        6826050475 in the name of David Lewis Jr.;

g.      $30,959.44 U.S. Currency in Comerica Bank Account No.
        6825289462 in the names of Ronald and Mary Kufner;

h.      $4,501,200.15 U.S. Currency in Comerica Bank Account No.
        9416234848 in the name of Interventional Pain Center, PLLC;

i.      $337,080.87 U.S. Currency in Comerica Bank Account No.
        1852973666 in the name of Kaiser Real Estate, LLC;

j.      $5,704.75 in Funds from Bank of America Account No.
        2269017298 in the name of Eric and Alcesa Backos;

k.      Funds in Fidelity Investments Account No. 169-421650 in the
        name of Eric and Alcesa Backos (approximately $384,006.23);

l.      Funds in Fidelity Investment Account No. 627-006648 in the
        name of Rajendra Bothra (approximately $4,633,351.67);

m.      Funds in Fidelity Investment Account No. 645-125105 in the
        name of Rajendra Bothra (approximately $20.40);

n.      Funds in Fidelity Investment Account No. 675-597678 in the
        name of Sonia Bothra (approximately $97,417.25);

o.      Funds in Fidelity Investment Account No. 637-299600 in the
        name of The Pain Center USA, PLLC (approximately
        $553,663.69);

p.     $1,095,860.05 U.S. Currency in Comerica Bank Account No. 1851508240 in the name of The Pain Center USA, PLLC;

q.     $579,307.63 U.S. Currency in Comerica Bank Account No. 1853038691 in the name of Interventional Pain Center, PLLC;

r.     $19,690.26 in Funds from Bank of America Account No. 5404770967 in the name of Christopher Russo;

s.     $22,455.12 in Funds from Bank of America Account No. 195039782 in the name of Eric and Alcesa Backos;

t.     All funds due and owing to Dr. Bothra, The Pain Center USA, PLLC, and/or Interventional Pain Center, and received by the law firm of Rodnick Unger, P.C. obtained in settlement of past, pending, or future civil lawsuits

u.     The following real property, identified as "Defendant Real Property":

1. 100 W. 5th Street #810, Royal Oak, MI 48067;
2. 111 N. Main Street, #205, Royal Oak, MI 48067;
3. 111 N. Main Street, #302, Royal Oak, MI 48067;
4. 315 W. 6th Street, Royal Oak, MI 48067;
5. 321 W. 6th Street, Royal Oak, MI 48067;
6. 350 N. Main Street, #708, Royal Oak, MI 48067;
7. 615-617 S. Washington, Royal Oak, MI 48067;
8. 619 S. Washington, Royal Oak, MI 48067;
9. 621 S. Washington, Royal Oak, MI 48067;
10. 623 S. Washington, Royal Oak, MI 48067;
11. 27715 Grant Street, St. Clair Shores, MI 48081;
12. 22480 Kelly Road, Eastpointe, MI 48021;
13. 27379 Van Dyke, Warren, MI 48093;
14. 28000 Van Dyke, Warren, MI 48093;
15. 27423 Van Dyke, Warren, MI 48093;
16. 27253 Van Dyke, Warren, MI 48093;
17. 27333 Van Dyke, Warren, MI 48093;
18. 700-704 S. Washington, Royal Oak, MI 48067;
19. 27402 Seyburn, Warren, MI 48092;
20. 27414 Seyburn, Warren, MI 48092;

       21. 27426 Seyburn, Warren, MI 48092;
       22. 27438 Seyburn, Warren, MI 48092;
       23. 27330 Seyburn Ave., Warren, MI 48092;
       24. 27342 Seyburn Ave, Warren, MI 48092;

v.    Funds from Cashier's Check issued by Comerica Bank, dated April 12, 2019, paid to the order of Interventional Pain Center PLLC in the amount of Two Dollars and Sixty Seven Cents in U.S. Currency ($2.67);

w.    Funds from Cashier's Check issued by Comerica Bank, dated April 12, 2019, paid to the order of The Pain Center USA PLLC in the amount of Sixty Eight Thousand Three Hundred and Eighty One Dollars and Sixty Four Cents in U.S. Currency ($68,381.64).

10.    The Defendants *in rem* are in the custody and/or control of the United States.

## Underlying Statutory Basis For Civil Forfeiture

11.    Title 18, United States Code, Section 1347(a) prohibits health care fraud: Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice-

(1) to defraud any health care benefit program; or

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

12.    Title 18, United States Code, Section 1349 provides that any person who attempts or conspires to commit health care fraud or wire fraud shall be

10

subject to the same penalties as those in 18 U.S.C. § 1347 and 18 U.S.C. § 1343, respectively.

13.     Title 21, United States Code, Section 841(a)(1), describes unlawful acts authorized by the subchapter, stating that it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.  Physicians unlawfully dispense controlled substances when the prescriptions are issued outside the course of professional medical practice.

14.     Title 21 United States Code, Section 846, states that it shall be unlawful for any person to attempt or conspire to commit a violation of Title 21, United States Code, Section 841.

15.     Title 18, United States Code, Section 1956 prohibits engaging in monetary transactions in property derived from specified unlawful activity:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
>
> A. With the intent to promote the carrying on of a specified unlawful activity;
>
> B. Knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the rouse, the ownership or control of the proceeds of a specified unlawful activity.

16.     Title 18, United States Code, Section 1956 sets forth a list of

"specified unlawful activities," which includes, "any act or activity constituting an offense involving a Federal health care offense."  18 U.S.C. § 1956(c)(7)(F)

17.     Title 18, United States Code, Section 1957 prohibits knowingly engaging in or attempting to engage in a monetary transaction in criminally derived property or a value greater than $10,000 and is derived from specified unlawful activity.

18.     Title 18, United States Code, Section 24(b), defines a "health care benefit program" as, among other things, "any public or private plan…affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service, for which payment may be made under the plan."

### Relevant Forfeiture Statutes

19.     Title 18, United States Code, Section 981(a)(1)(A) provides for the civil forfeiture to the United States of any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of Title 18, or any property traceable to such property.

20.     Title 18, United States Code, Section 981(a)(1)(C) provides for the civil forfeiture to the United States of the proceeds of crimes designated as "specified unlawful activities" as defined in section 1956(c)(7), or a conspiracy to commit such offense.

21.     Title 21, United States Code, Section 881(a) provides for the civil forfeiture to the United States of "[i] All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation . . . [ii] All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation."

## Facts Supporting Forfeiture of Defendants *in rem*

### *Health Benefit Programs*

22.     The Medicare Program ("Medicare") is a federally-funded health care program for the aged and disabled established by Congress in 1965, as Title XVIII of the Social Security Act and codified at 42 U.S.C. § 1395.  Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who receive Medicare benefits are referred to as Medicare "beneficiaries."

23.     The Michigan Medicaid program ("Medicaid") is a federal and state funded health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. Medicaid covers the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. CMS is responsible for overseeing the Medicaid program in participating states, including Michigan.

24.     Blue Cross and Blue Shield of Michigan ("Blue Cross") is a private health insurer that provides health benefits to individuals qualified under Blue Cross health insurance plans.

25.     Medicare, Medicaid, and Blue Cross, are "health care benefit programs" as defined by Title 18, United States Code, Section 24(b).

26.     The Medicare Program includes coverage under four primary components: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

27.     The medical services at issue in this Complaint were covered by Part B of the Medicare medical insurance program. Specifically, Part B covers among other things, medically necessary physician office services, outpatient physical therapy services, nerve conduction, and nerve block injections (including facet

joint injections). Part B also covers services that are provided in connection with a laboratory testing facility, including urine drug testing.

28.     Participants in Medicare insurance programs agreed to abide by the policies and procedures, rules, and regulations governing reimbursement under these plans. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

29.     Participating providers are given and/or are provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Health care providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered.

30.     Medicare regulations require health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. Medicare requires complete and accurate patient medical records so that Medicare may verify that the services

were provided as described on the claim form. These records are required to be sufficient to permit Medicare to review the appropriateness of Medicare payments made to the health care provider.

31.     Under Medicare Part B, physician office visit services, outpatient physical therapy services, nerve conduction, and nerve block injections, including facet joint injections, were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury.  Individuals providing these services were required to have the appropriate training, qualifications, and licenses to provide such services.  Providers were required to: (1) document the medical necessity of these services; (2) document the date the service was performed; (3) identify the provider who performed the service; and (4) identify the clinic, physician office, or group practice where the provider provided the service.  Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers.  To be reimbursed from Medicare for physician office visit services, outpatient physical therapy services, nerve conduction, and nerve block injections, including facet joint injections, the services had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare.

32.     Payments under the Medicare, Medicaid and Blue Cross programs were often made directly to a provider of the goods or services, rather than to the

beneficiary.  This occurred when the provider submitted the claim to Medicare, Medicaid, or Blue Cross for payment, either directly or through a billing company.

***The Pain Center USA and Interventional Pain Center***

33.     The Pain Center USA, PLLC was a Michigan professional limited liability company, doing business at 27423 Van Dyke Avenue, Suite A, Warren, Michigan 48093 and 22480 Kelly Road, Eastpointe, Michigan 48021.  The Pain Center was a participating provider with Medicare, Medicaid and Blue Cross; and submitted claims to each of these federal health benefit programs.

34.     Interventional Pain Center, PLLC was a Michigan professional limited liability company, doing business at 27423 Van Dyke Avenue, Suite B, Warren, Michigan 48093.  Interventional Pain Center was a participating provider with Medicare, Medicaid and Blue Cross; and submitted claims to each of these federal health benefit programs.

***Physicians***

35.     Dr. Rajendra Bothra, a resident of Oakland County, was a physician licensed in the state of Michigan who controlled, owned and operated The Pain Center and Interventional Pain Center.  Dr. Bothra was enrolled as a participating provider with Medicare for The Pain Center and Interventional Pain Center and submitted claims under these entities.  Dr. Bothra was also licensed by the Drug

Enforcement Administration ("DEA") to prescribe controlled substances and issued prescriptions to patients at The Pain Center.

36.    Dr. Eric Backos, a resident of Oakland County, was a physician licensed in the state of Michigan who was enrolled as a participating provider with Medicare for The Pain Center and Interventional Pain Center.  Dr. Backos was also licensed by the DEA to prescribe controlled substances and issued prescriptions to patients at The Pain Center.

37.    Dr. David Lewis, a resident of Wayne County, was a physician licensed in the state of Michigan who was enrolled as a participating provider with Medicare for The Pain Center and Interventional Pain Center.  Dr. Lewis was also licensed by the DEA to prescribe controlled substances and issued prescriptions to patients at The Pain Center.

38.    Dr. Christopher Russo, a resident of Kent County, was a physician licensed in the state of Michigan who was enrolled as a participating provider with Medicare for The Pain Center and Interventional Pain Center.  Dr. Russo was also licensed by the DEA to prescribe controlled substances and issued prescriptions to patients at The Pain Center.

39.    Dr. Ronald Kufner, a resident of Kent County, was a physician licensed in the state of Michigan who was enrolled as a participating provider with Medicare for The Pain Center and Interventional Pain Center.  Dr. Kufner was also

licensed by the DEA to prescribe controlled substances and issued prescriptions to patients at The Pain Center.

***The Fraud Scheme***

40.     Dr. Bothra, Dr. Backos, Dr. Kufner, Dr. Lewis, and Dr. Russo, have been indicted by a grand jury in Case No. 18-cr-20800 (E.D. Mich.) for Count 1, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349, Counts 2 through 18 and 30 through 42, Health Care Fraud, Aid and Abetting in violation of 18 U.S.C. §§ 1347 and 2, Count 43, Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and 846, and Counts 44 through 50 and 53 through 56, Unlawful Distribution of Controlled Substances, Aiding and Abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

41.     The physicians described above each engaged in the following unlawful conduct:

a.     The prescribing of medically unnecessary opioids and other controlled substances to induce office visits by beneficiaries;

b.     The prescribing of medically unnecessary opioids and other controlled substances to induce beneficiaries to undergo medically unnecessary and sometimes painful injections;

c.     The submission of false and fraudulent claims to Medicare for facet joint injections, and other services that are medically unnecessary, not eligible for Medicare reimbursement, and/or not provided;

    d.    Referring or causing the referral of Medicare beneficiaries, or ordering or causing the ordering of testing, by other providers, including MRI companies and diagnostic laboratories, where the services are, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

42.    The utilization of opioids was a part of the pain management program in place at Pain Center, to maintain patients. Pain Center and its physicians then performed and provided medically unnecessary services to these patients, which were subsequently billed to public and private insurers, including Medicare, Medicaid, and Blue Cross.

43.    The medically unnecessary procedures included facet joint injections, nerve blocks, anesthesia, and destruction of facet joints.

44.    Pain Center saw approximately 200-250 patients each day and each physician saw 60-70 patients each day.

45.    The standing order at Pain Center was to prescribe pain medication and to conduct unnecessary ancillary services, such as facet joint and facet block injections, under unnecessary anesthesia.

46.    Nearly every patient receiving an injection also received an intravenous sedation injection of benzodiazepine and/or a narcotic, including the use of Fentanyl.

47.    The system in place at Pain Center was designed to bill each patient for the maximum number of services that were purportedly provided.

48.     In addition to the billing for unnecessary services and the prescribing of unnecessary controlled substances, each patient was billed for durable medical equipment, including back braces, assuming the brace is covered by the patients' medical insurance.  The braces were provided to patients even if they do not need a back brace.

49.     Dr. Bothra submitted or caused the submission of claims to Medicare, Medicaid, and/or Blue Cross, for services that were medically unnecessary, not eligible for reimbursement, and/or not provided as represented, including but not limited to the allegations, set forth as Counts 2 through 13 of the Indictment in Case No. 18-cr-20800 (Dkt. No. 1).

50.     Dr. Backos submitted or caused the submission of claims to Medicare, Medicaid, and/or Blue Cross, for services that were medically unnecessary, not eligible for reimbursement, and/or not provided as represented, including but not limited to the allegations, set forth as Counts 14 through 18 of the Indictment in Case No. 18-cr-20800 (Dkt. No. 1).

51.     Dr. Lewis submitted or caused the submission of claims to Medicare, Medicaid, and/or Blue Cross, for services that were medically unnecessary, not eligible for reimbursement, and/or not provided as represented, including but not limited to the allegations, set forth as Counts 30 and 31of the Indictment in Case No. 18-cr-20800 (Dkt. No. 1).

52.     Dr. Russo submitted or caused the submission of claims to Medicare, Medicaid, and/or Blue Cross, for services that were medically unnecessary, not eligible for reimbursement, and/or not provided as represented, including but not limited to the allegations, set forth as Counts 30 through 36 of the Indictment in Case No. 18-cr-20800 (Dkt. No. 1).

53.     Dr. Kufner submitted or caused the submission of claims to Medicare, Medicaid, and/or Blue Cross, for services that were medically unnecessary, not eligible for reimbursement, and/or not provided as represented, including but not limited to the allegations, set forth as Counts 37 through 42 of the Indictment in Case No. 18-cr-20800 (Dkt. No. 1).

54.     The patients continued to subject themselves to these medically unnecessary services in exchange for Schedule II controlled substance prescriptions.

55.     More than 90% of the controlled substance prescriptions prescribed by Pain Center physicians were for Schedule II controlled substances.

56.     Pain Center and its physicians did not test for marijuana because, if patients tested positive for the presence of the drug in their system, the doctors and practitioners at the Pain Center would not be able to prescribe opioids to the patients.

57.    A large portion of Pain Center's pain population actively sought controlled substances from the Pain Center and received them.

58.    Pain Center physicians did not consider the effects of controlled substances on chronic patient conditions, resulting in the prescribing of controlled substances to patients with renal failure and kidney problems.

59.    On at least three occasions, patients of Pain Center died as a result of drug intoxications:

a.    On 2/12/2015, it was determined by the Macomb County Medical Examiner's Office that on 1/2/2015, a Medicare Beneficiary 1 died as a result of drug intoxication that was determined to be caused by the combined effects of multiple prescription medications.  The patient was last seen by Dr. Backos on 12/26/2014 and filled a prescription from Dr. Backos for 150 Hydrocodone-Acetaminophen 10-325 on 12/27/2014.

b.    On 9/10/2014, it was determined by the Macomb County Medical Examiner's Office, that on 8/16/2014, Medicare Beneficiary 2 died as a result of intoxication by the combined effects of multiple prescription medications.  The patient was last seen on 8/15/2014 by Dr. Backos and last prescribed Oxycodone 30mg on 8/15/2014 by Dr. Backos.

c.   On 12/17/2013, it was determined by the Macomb County Medical Examiner's Office that on 11/23/2013, Medicare Beneficiary 3 died because of intoxication by the combined effects of multiple prescription medications.  The patient was last seen on 11/20/2013 by Dr. Backos and last prescribed Hydrocodone 10mg, Morphine Sulfate ER 30mg, and Morphine Sulfate 60mg, on 11/20/2013 by Dr. Backos.

60.   Dr. Bothra knowingly, intentionally, and unlawfully distributed controlled substances outside the usual course of professional medical practice, including but not limited to the prescriptions described in Counts 44 through 46 of the Indictment in Case No. 18-cr-20800 (Dkt. No. 1).

61.   Dr. Backos knowingly, intentionally, and unlawfully distributed controlled substances outside the usual course of professional medical practice, including but not limited to the prescriptions described in Counts 47 through 50 of the Indictment in Case No. 18-cr-20800 (Dkt. No. 1).

62.   Dr. Lewis knowingly, intentionally, and unlawfully distributed controlled substances outside the usual course of professional medical practice, including but not limited to the prescriptions described in Count 53 of the Indictment in Case No. 18-cr-20800 (Dkt. No. 1).

63.   Dr. Russo knowingly, intentionally, and unlawfully distributed controlled substances outside the usual course of professional medical practice,

including but not limited to the prescriptions described in Count 54 of the Indictment in Case No. 18-cr-20800 (Dkt. No. 1).

64.     Dr. Kufner knowingly, intentionally, and unlawfully distributed controlled substances outside the usual course of professional medical practice, including but not limited to the prescriptions described in Counts 55 and 56 of the Indictment in Case No. 18-cr-20800 (Dkt. No. 1).

65.     On several occasions, Pain Center physicians also billed for services to deceased beneficiaries. For example, between January 1, 2013 and March 12, 2018, Dr. Bothra billed Medicare as the rendering physician for 100 claims on eight beneficiaries where the date of the services purportedly provided were after the beneficiaries' dates of death.

66.     Pain Center physicians also billed for services that were purportedly provided by them, while they were documented as traveling outside the country. For example, between January 1, 2013 and March 12, 2018, Dr. Bothra billed Medicare for five claims on five beneficiaries for CPT codes that require the physician to be face-to-face with the patient and/or family on days when Dr. Bothra was out of the country.

67.     Additionally, Pain Center physicians purported to issue "refill" prescriptions for Schedule II controlled substances while they were out of the country. For example, Dr. Backos had 170 schedule II controlled substance

prescriptions issued to 134 patients with a total pill count of 17,380 on days Dr. Backos was out of the country, and Dr. Bothra had 52 schedule II controlled substance prescriptions issued to 52 patients with a total pill count of 4,480 on days Dr. Bothra was out of the country.

68.    Dr. Bothra, Dr. Backos, Dr. Kufner, and Dr. Russo, acknowledged their awareness of Medicare rules, regulations, and federal laws, including that they would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that they would refrain from violating the federal Stark Act and Anti-Kickback statute, through the submission of a signed enrollment application to the Center for Medicare and Medicaid Services (CMS).

69.    The fraudulent practices of The Pain Center, Interventional Pain Center, and its physicians, including Dr. Bothra, Dr. Backos, Dr. Kufner, Dr. Russo, and Dr. Lewis, resulted in the unlawful prescribing of Schedule II controlled substances to patients and the unlawful submission of claims for reimbursement to Medicare, Medicaid, and Blue Cross.

## Forfeiture of Defendants *in rem*

70.    As set forth in the paragraphs above, Dr. Bothra, Dr. Backos, Dr. Kufner, Dr. Russo, and Dr. Lewis, others, and their related entities, engaged in health care fraud and drug diversion, and derived millions of dollars in proceeds from that illegal activity. The proceeds of this fraud scheme were deposited into

the accounts described in the paragraphs below. Defendants *in rem* constitute

proceeds of the fraud scheme or were funds used to conceal or disguise the nature,

location, source, ownership, or control of the fraud proceeds (i.e. involved in

money laundering).

71.     The Pain Center, Interventional Pain Center, and the physicians

fraudulently obtained at least $43 million in Medicare, Medicaid, and Blue Cross,

funds into two accounts: (i) Comerica Bank Account No. 1851508240, in the name

of The Pain Center USA, PLLC, and (ii) Comerica Bank Account No.

1853038691, in the name of Interventional Pain Center, PLLC.

72.     Dr. Bothra was the sole signatory on both the Comerica 8240 and

Comerica 8691 accounts.

73.     Dr. Bothra funneled the Medicare, Medicaid, and Blue Cross funds

deposited into the Comerica 8240 and Comerica 8691 accounts into his own

personal accounts as well as the personal accounts of Dr. Backos, Dr. Kufner, Dr.

Russo, and Dr. Lewis.

74.     From his personal accounts, Dr. Bothra used the proceeds of the fraud

scheme and funds involved in money laundering to purchase real property.

***Financial Defendants in rem***

75.     The following chart lists the accounts from which Defendants *in rem*

were seized. The chart contains a "TIER" designation column indicating the

manner in which the account received Medicare funds or BCBS insurance funds. Accounts with a "TIER ONE" designation received direct deposits of Medicare funds as a result of fraudulently submitted claims by the operator(s) of PAIN CENTER. Accounts with a "TIER TWO" designation received illegally obtained monies by way of transfer of funds, wire, deposits of checks, interbank transfers or by withdrawal and deposits from TIER ONE accounts. Accounts with a "TIER THREE" designation received illegally obtained monies by way of transfer of funds, wire, deposits of checks, interbank transfers or by withdrawal and deposits from TIER TWO accounts. Accounts with a "TIER FOUR" designation received illegally obtained monies by way of transfer of funds, wire, deposits of checks, interbank transfers or by withdrawal and deposits from TIER THREE accounts.

| Accounts Relevant to Tracing of Target Accounts | | | | |
|---|---|---|---|---|
| Financial Institution | Account Number | Account Name | Tier | Defendant *in rem* |
| Comerica Bank | 1851508240 | The Pain Center USA, PLLC | 1 | $1,095,860.05 |
| Comerica Bank | 1853038691 | Interventional Pain Center, PLLC | 1 | $579,307.63 |
| Comerica Bank | 1852393634 | The Pain Center USA, PLLC | 2 | $1,100,460.30 |
| Bank of America | 5404770967 | Christopher RUSSO | 2 | $19,690.26 |
| Comerica Bank | 6826050475 | David LEWIS, Jr. | 2 | $74,333.55 |
| Bank of America | 195039782 | Eric and Alcesa BACKOS | 2 | $22,455.12 |

| Comerica Bank | 9416234848 | Interventional Pain Center, PLLC | 2 | $4,501,200.15 |
|---|---|---|---|---|
| Comerica Bank | 1852973666 | Kaiser Real Estate, LLC | 2 | $337,080.87 |
| Comerica Bank | 6825289306 | Ronald and Mary KUFNER | 2 | $19,607.44 |
| Comerica Bank | 0013166764 | Rajendra and Pramila BOTHRA | 3 | $129,123.96 |
| Fidelity Investments | 637-409820 | Rajendra BOTHRA | 3 | Approximately $12,195,220.59 |
| Comerica Bank | 6822878135 | Rajendra BOTHRA | 3 | $102,686.96 |
| Fidelity Investments | 637-299600 | The Pain Center USA, PLLC Profit Sharing Plan | 3 | Approximately $553,663.69 |
| Bank of America | 2269017298 | Eric and Alcesa BACKOS | 3 | $5,704.75 |
| Fidelity Investments | 169-421650 | Eric and Alcesa BACKOS | 3 | Approximately $384,006.23 |
| Comerica Bank | 6825289462 | Ronald and Mary KUFNER | 3 | $30,959.44 |
| Fidelity Investments | 675-597678 | Sonia BOTHRA Roth IRA | 3 | Approximately $97,417.25 |
| Fidelity Investments | 627-006648 | Rajendra BOTHRA | 3 | Approximately $4,633,351.67 |
| Fidelity Investments | 645-125105 | Rajendra BOTHRA Rollover IRA | 4 | Approximately $20.40 |

76.  **Defendant *in rem* $1,095,860.05 Funds in Comerica Bank Account No. 1851508240**, in the Name of The Pain Center USA, PLLC, was an electronic funds repository account for receipt of payment for service from Medicare (i.e. TIER ONE Bank Account).  This account received at least a combined $39,281,161.00 worth of deposits from Medicare, Medicaid, and Blue Cross/Blue

Shield, via direct deposits between January 2013 and August 2018 as a result of the healthcare fraud and drug diversion scheme described herein.

77.    The funds deposited into this account constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

78.    **Defendant *in rem*  $579,307.63 Funds in Comerica Bank Account No. 1853038691**, in the name of Interventional Pain Center, PLLC, was an electronic funds repository account for receipt of payment for service from Medicare (i.e. TIER ONE Bank Account).  This account received at least a combined $4,371,691 worth of deposits from Medicare, Medicaid and Blue Cross/Blue Shield, via direct deposits between January 2016 and November 2018 as a result of the healthcare fraud and drug diversion scheme described herein.

79.    The funds deposited into this account constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were used or intended to be used in any manner or part to

commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

80.     In addition to funds seized from this account, Comerica Bank issued a **Cashier's Check on April 12, 2019, paid to the order of Interventional Pain Center PLLC, in the amount of Two Dollars and Sixty Seven Cents in U.S. Currency ($2.67)** from **Comerica Bank Account No. 1853038691**. These funds are forfeitable to the United States for the reasons set forth in the preceding paragraph.

81.     **Defendant *in rem* $1,100,460.30 Funds in Comerica Bank Account No. 1852393634**, in the name of The Pain Center USA, PLLC, is a TIER TWO bank account that received at least $28,959,000.00 worth of deposits between January 2013 and August 2018 from Comerica Bank Account No. 1851508240, a TIER ONE bank account.

82.     At least $17,755,904.51 deposited into this account from Comerica Bank Account No. 1851508240 constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

83.     Funds were transferred from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

84.     Between January 2013 and August 2018, there were at least 193 transfers of funds over $10,000 from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account, each of which constituted a violation of 18 U.S.C. § 1957 in that:  (1) each deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846, which are specified unlawful activities under 18 U.S.C. § 1956(c)(7)(F); and (4) the transactions occurred in the United States.

85.     In addition to funds seized from this account, Comerica Bank issued a **Cashier's Check on April 12, 2019, paid to the order of The Pain Center USA PLLC, Sixty Eight Thousand Three Hundred and Eighty One Dollars and**

Sixty Four Cents in U.S. Currency (**$68,381.64**) from **Comerica Bank Account No. 1852393634**. These funds are forfeitable to the United States for the reasons set forth in the preceding paragraph.

86.    **Defendant *in rem* Funds in Bank of America Account No. 5404770967 (approximately $13,690.26)**, in the name of Christopher Russo, is a TIER TWO bank account that received at least $75,731.00, between January 2016 and December 2017, from Comerica Bank Account No. 1851508240, a TIER ONE bank account.

87.    At least $75,731 deposited into this account from Comerica Bank Account No. 1851508240 constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

88.    Funds were transferred from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal

proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

89.     Between June 2016 and September 2016, there were three transfers of funds over $10,000 from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account.  Each of these deposits from the TIER ONE account to this account, constitutes a violation of 18 U.S.C. § 1957 in that:  (1) each deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846, which are specified unlawful activities under 18 U.S.C. § 1956(c)(7)(F); and (4) the transactions occurred in the United States.

90.     **Defendant *in rem* $74,333.55 Funds in Comerica Bank Account No. 6826050475**, in the Name of David Lewis, Jr., is a TIER TWO bank account that received at least $524,247.63, between December 2016 and June 2018, from Comerica Bank Account No. 1851508240, a TIER ONE bank account.

91.     At least $524,247.63 deposited into this account from Comerica Bank Account No. 1851508240 constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were

used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

92.     Funds were transferred from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the funds in the account subject to forfeiture as "involved in" the money laundering.

93.     Between December 2016 and February 2018, there were at least 15 transfers of funds over $10,000 from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account. Each of these deposits from the TIER ONE account to this account, constitutes a violation of 18 U.S.C. § 1957 in that: (1) each deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846, which are specified unlawful activities under 18 U.S.C. § 1956(c)(7)(F); and (4) the transactions occurred in the United States.

94.     **Defendant *in rem* Funds in Bank of America Account No. 195039782 (approximately $16,967.97)**, in the Names of Eric and Alcesa Backos, is a TIER TWO bank account that received at least $1,630,402.06 in deposits from, between January 2014 and August 2018, from Comerica Bank Account No. 1851508240, a TIER ONE bank account.

95.     At least $1,630,402.06 deposited into this account from Comerica Bank Account No. 1851508240 constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

96.     Funds were transferred from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

97.     Between January 2014 and July 2018, there were at least 57 transfers of funds over $10,000 from TIER ONE bank account Comerica Bank Account No.

36

1851508240 to this account.  Each of the 57 deposits from the TIER ONE account

to this account, constitutes a violation of 18 U.S.C. § 1957 in that:  (1) each deposit

was a monetary transaction involving criminally derived funds; (2) those

criminally derived funds had a value greater than $10,000; (3) the funds were

derived from health care fraud and a conspiracy to commit health care fraud in

violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841

and/or 846, which are specified unlawful activities under 18 U.S.C. §

1956(c)(7)(F); and (4) the transactions occurred in the United States.

98.     **Defendant *in rem* $4,501,200.15 Funds in Comerica Bank Account

No. 9416234848**, in the name of Interventional Pain Center, PLLC, is a TIER

TWO bank account that received at least $6,534,000.00 in deposits, between

January 2017 and August 2018, from Comerica Bank Account No. 1853038691, a

TIER ONE bank account.

99.     At least $2,038,599.38 deposited into this account from Comerica

Bank Account No. 185303869**,** constituted: (i) proceeds of health care fraud and a

conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and

1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were

used or intended to be used in any manner or part to commit, or to facilitate the

commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

100.   Funds were transferred from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

101.   Between May 2017 and August 2018, there were at least 14 transfers of funds over $10,000 from TIER ONE bank account Comerica Bank Account No. 1853038691 to this account.  Each of these deposits from the TIER ONE account to this account constitutes a violation of 18 U.S.C. § 1957 in that:  (1) each deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846, which are specified unlawful activities under 18 U.S.C. § 1956(c)(7)(F); and (4) the transactions occurred in the United States.

102.   **Defendant *in rem*  $337,080.87 Funds in Comerica Bank Account No. 185297366**, in the name of Kaiser Real Estate, LLC, is a TIER TWO bank account that received at least $1,377,611.66 in deposits, between January 2014 and

38

August 2018, from Comerica Bank Account No. 1851508240, a TIER ONE bank account. Dr. Bothra is the sole signatory on the bank account.

103.    At least $1,377,611.66 deposited into this account from Comerica Bank Account No. 1851508240 constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

104.    Funds were transferred from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

105.    Between January 2014 and January 2018, there were at least 42 transfers of funds over $10,000 from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account. Each of the 42 deposits from the TIER ONE account to this account, constitutes a violation of 18 U.S.C. § 1957 in that: (1) each deposit was a monetary transaction involving criminally derived funds; (2)

those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846, which are specified unlawful activities under 18 U.S.C. § 1956(c)(7)(F); and (4) the transactions occurred in the United States.

106.   **Defendant *in rem*  $19,607.44 Funds in Comerica Bank Account No. 6825289306**, in the names of Ronald and Mary KUFNER, is a TIER TWO bank account that received at least $1,657,279.67 in deposits, between January 2015 and December 2017, from Comerica Bank Account No. 1851508240, a TIER ONE bank account.

107.   At least $1,657,279.67 deposited into this account from Comerica Bank Account No. 1851508240 constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846, and that any legitimate funds were commingled with illegitimate funds.

108.   Funds were transferred from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18

U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

109.   Between July 2015 and November 2017, there were at least 28 transfers of funds over $10,000 from TIER ONE bank account Comerica Bank Account No. 1851508240 to this account.  Each of the 28 deposits from the TIER ONE account to this account constitutes a violation of 18 U.S.C. § 1957 in that: (1) each deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846, which are specified unlawful activities under 18 U.S.C. § 1956(c)(7)(F); and (4) the transactions occurred in the United States.

110.   **Defendant *in rem*  $129,123.96 Funds in Comerica Bank Account No. 0013166764**, received at least $5,470,000.00 worth of deposits, between January 2013 and December 2017, from Comerica Bank Account No. 1852393634, a TIER TWO bank account, and at least $225,661.34, during the same period, from Comerica Bank Account No. 1851508240, a TIER ONE bank account.  Finally, this account received at least $750,000.00 worth of deposits,

between 2014 and 2017, from Comerica Bank Account No. 6822878135, a TIER

THREE account owned by Dr. Bothra.

111.   Funds deposited into this account constituted: (i) proceeds of health

care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C.

§§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or

indirectly, and/or were used or intended to be used in any manner or part to

commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or

846, and that any legitimate funds were commingled with illegitimate funds.

112.   Funds were transferred from TIER ONE bank account Comerica Bank

Account No. 1851508240, TIER TWO bank account Comerica Bank Account No.

1852393634, and TIER THREE bank account Comerica Bank Account No.

6822878135, to this account in order to conceal or disguise the nature, source,

location, ownership, and control of the criminal proceeds in violation of 18 U.S.C.

§ 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and

disguise the nature, source, location, ownership, and control of the criminal

proceeds, making the full amount of the funds in the account subject to forfeiture

as "involved in" the money laundering.

113.   Between January 2013 and April 2017, there were at least 32 transfers

of funds over $10,000 from TIER TWO bank account Comerica Bank Account

No. 1852393634 to this account.  Each of the deposits from the TIER TWO

account to this account, constitutes a violation of 18 U.S.C. § 1957 in that: (1) each deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846, which are specified unlawful activities under 18 U.S.C. § 1956(c)(7)(F); and (4) the transactions occurred in the United States.

114. **Defendant *in rem* Funds in Fidelity Investments Account No. 637-409820 (approximately $2,852.33)**, in the name of Dr. Bothra, is a TIER THREE investment account. Subpoenaed documents show Fidelity Investments Account No. 637-409820 received at least $5,526,660 worth of deposits, between January 2013 and December 2017, from Comerica Bank Account No. 13166764, a TIER TWO bank account. Further, records show Fidelity Investments Account No. 637-409820 received at least $200,000.00 worth of deposits in 2014 from Comerica Bank Account No. 1852393634, a TIER TWO bank account.

115. Funds deposited into this account constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were used or intended to be used in any manner or part to

commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846, and that any legitimate funds were commingled with illegitimate funds.

116.   Funds were transferred from TIER TWO **Comerica Bank Account No. 13166764** and TIER TWO **Comerica Bank Account No. 1852393634** to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

117.   Between November 2014 and November 2017 there were at least 20 transfers of funds over $10,000 from TIER TWO Comerica Bank Account No. 13166764 to this account.  Also, on November 4, 2014, there was one transfer of funds over $10,000 from TIER TWO Comerica Bank Account No. 1852393634 to this account.  Each of the deposits from the TIER TWO accounts to this account constitutes a violation of 18 U.S.C. § 1957 in that:  (1) each deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846,

which are specified unlawful activities under 18 U.S.C. § 1956(c)(7)(F); and (4)

the transactions occurred in the United States.

118. **Defendant *in rem* $102,686.96 Funds in Comerica Bank Account No. 6822878135**, in the name of Dr. Bothra, is a TIER THREE bank account that received at least $1,440,606.24 worth of deposits between January 2014 and December 2017, from Comerica Bank Account No. 1852393634, a TIER TWO Bank Account, and at least $264,000.00 worth of deposits in 2017 from Comerica Bank Account No. 1853038691, a TIER ONE bank account.

119. Funds deposited into this account constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

120. Funds were transferred from TIER ONE Comerica Bank Account No. 1853038691 and TIER TWO Comerica Bank Account No. 1852393634 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full

amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

121.   **Defendant *in rem* Funds in Fidelity Investments Account No. 637-299600 (approximately $553,663.69)**, in the name of The Pain Center USA, PLLC Profit Sharing Plan, is a TIER THREE investment account that received at least $480,000.00 worth of deposits, between 2013 and 2017 from Comerica Bank Account No. 1851508240, a TIER ONE bank account.  This account also received at least $300,000.00 worth of deposits in 2017 from Comerica Bank Account No. 13166764, a TIER THREE bank account.

122.   Funds deposited into this account constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

123.   Funds were transferred from TIER ONE Comerica Bank Account No. 1851508240 and TIER THREE Comerica Bank Account No. 13166764 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature,

source, location, ownership, and control of the criminal proceeds, making the full

amount of the funds in the account subject to forfeiture as "involved in" the money

laundering.

124. Between January 2013 and January 2017, there were at least five

deposits of funds over $10,000 from TIER ONE bank account Comerica Bank

Account No. 1851508240 to this account. By check dated January 13, 2017, there

was one transfer from TIER THREE bank account Comerica Bank Account No.

13166764 to this account. Each of these deposits from the TIER ONE account to

this account, constitutes a violation of 18 U.S.C. § 1957 in that: (1) each deposit

was a monetary transaction involving criminally derived funds; (2) those

criminally derived funds had a value greater than $10,000; (3) the funds were

derived from health care fraud and a conspiracy to commit health care fraud in

violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841

and/or 846, which are specified unlawful activities under 18 U.S.C. §

1956(c)(7)(F); and (4) the transactions occurred in the United States.

125. **Defendant *in rem* Funds in Bank of America Account No.**

**2269017298 (approximately $2,852.33)**, in the names of Eric and Alcesa Backos,

is a TIER THREE bank account that received at least $392,000.00 in deposits

between 2014 and 2017 from Bank of America Account No 195039782, a TIER

TWO bank account.

126.   At least $392,000.00 deposited into this account from Bank of America Account No 195039782 constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

127.   Funds were transferred from TIER TWO **Bank of America Account No. 195039782** to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

128.   On August 4, 2016 and October 7, 2016 there were deposits of funds over $10,000 from TIER TWO bank account Bank of America Account No. 195039782 to this account. Each of these deposits from the TIER ONE account to this account, constitutes a violation of 18 U.S.C. § 1957 in that:  (1) each deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in

violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841

and/or 846, which are specified unlawful activities under 18 U.S.C. §

1956(c)(7)(F); and (4) the transactions occurred in the United States.

129.    **Defendant *in rem*  $30,959.44 Funds in Comerica Bank Account**

**No. 6825289462**, in the names of Ronald and Mary Kufner, is a TIER THREE

bank account that received at least $368,775.19 worth of deposits, between January

2015 and December 2017, from Comerica Bank Account No. 6825289306, a TIER

TWO bank account.

130.    At least $368,775.19 deposited into this account from Comerica Bank

Account No. 6825289306 constituted: (i) proceeds of health care fraud and a

conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and

1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were

used or intended to be used in any manner or part to commit, or to facilitate the

commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

131.    Funds were transferred from TIER TWO Comerica Bank Account No.

6825289306 to this account in order to conceal or disguise the nature, source,

location, ownership, and control of the criminal proceeds in violation of 18 U.S.C.

§ 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and

disguise the nature, source, location, ownership, and control of the criminal

proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

132.   Between April 2016 and October 2017, there were at least 14 deposits of funds over $10,000 from TIER TWO bank account Comerica Bank Account No. 6825289306 to this account.  Each of the14 deposits from the TIER ONE account to this account, constitutes a violation of 18 U.S.C. § 1957 in that:  (1) each deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846, which are specified unlawful activities under 18 U.S.C. § 1956I(7)(F); and (4) the transactions occurred in the United States.

133.   **Defendant *in rem*  Funds in Fidelity Investments Account No. 169-421650 (approximately $384,006.23**), in the names of Eric and Alcesa Backos**,** is a TIER THREE bank account that received at least $259,000.00 worth of deposits, between January 2013 and August 2018, from Bank of America Account No. 195039782, a TIER TWO bank account.

134.   At least $259,000.00 deposited into this account from Bank of America Account No. 195039782 constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and

1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

135.   Funds were transferred from TIER TWO Bank of America Account No. 195039782 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

136.   Between April 2013 and October 2018, there were at least five deposits of funds over $10,000 from TIER TWO bank account Bank of America Account No. 195039782 to this account.  Each of the five deposits from the TIER TWO account to this account, constitutes a violation of 18 U.S.C. § 1957 in that: (1) each deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846, which are specified unlawful activities under 18 U.S.C. § 1956(c)(7)(F); and (4) the transactions occurred in the United States.

137.   **Defendant** *in rem*  **Funds in Fidelity Investments Account No. 675-597678 (approximately $97,417.25)**, in the name of Sonia Bothra Roth IRA, is a TIER THREE investment account that received at least $27,500.00 in deposited funds, between January 2013 and December 2017, from Comerica Bank Account No. 0013166764, a TIER THREE bank account.

138.   At least $27,500.00 deposited into this account from Bank of America Account No. 0013166764 constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or were used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

139.   Funds were transferred from TIER THREE Bank of America Account No. 0013166764 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

140.   **Defendant** *in rem* **Funds in Fidelity Investments Account No. 627-006648 (approximately $4,633,351.67)**, in the name of Rajendra Bothra, is a

TIER THREE investment account that received at least $2,813,856.50 in deposited funds, between January 2013 and December 2014, from Fidelity Investments Account No. 637-409820, a TIER TWO investment account.

141. At least $2,813,945.50 deposited into this account from Fidelity Investments Account No. 637-409820 constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

142. Funds were transferred from TIER TWO Fidelity Investments Account No. 637-409820 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

143. Between August 2013 and May 2014, there were at least three deposits of funds over $10,000 from TIER TWO account Fidelity Investments Account No. 637-409820 to this account. Each of the three deposits from the TIER TWO account to this account, constitutes a violation of 18 U.S.C. § 1957 in

that:  (1) each deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846, which are specified unlawful activities under 18 U.S.C. § 1956(c)(7)(F); and (4) the transactions occurred in the United States.

144.  **Defendant *in rem* Funds in Fidelity Investments Account No. 645-125105 (approximately $20.40)**, in the name of Rajendra Bothra Rollover IRA, is a TIER FOUR investment account that received at least $1,053,471.20, in a single deposit on November 1, 2017, from Fidelity Investments Account No. 637-299600, a TIER THREE investment account.

145.  At least $1,053,471.20 deposited into this account from Fidelity Investments Account No. 637-299600 constituted: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

146.  Funds were transferred from TIER THREE Fidelity Investments Account No. 637-299600 to this account in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18

U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

147.   On November 1, 2017, there was a deposit of funds over $10,000 from TIER THREE account Fidelity Investments Account No. 637-299600 to this account.  This transfer was in the amount of $1,053,471.20.  This deposit from the TIER THREE account to this account, constitutes a violation of 18 U.S.C. § 1957 in that:  (1) the deposit was a monetary transaction involving criminally derived funds; (2) those criminally derived funds had a value greater than $10,000; (3) the funds were derived from health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, as well as violations of 21 U.S.C. §§ 841 and/or 846, which are specified unlawful activities under 18 U.S.C. § 1956(c)(7)(F); and (4) the transactions occurred in the United States.

### Real Property Defendants in rem

148.   In addition to the Financial Defendants *in rem*, Dr. Bothra funneled proceeds of the health care fraud and drug diversion scheme and funds involved in money laundering into the following Defendant Real Properties:

      1.      100 W. 5th Street #810, Royal Oak, MI 48067;

      2.      111 N. Main Street, #205, Royal Oak, MI 48067;

3.     111 N. Main Street, #302, Royal Oak, MI 48067;

4.     315 W. 6th Street, Royal Oak, MI 48067;

5.     321 W. 6th Street, Royal Oak, MI 48067;

6.     350 N. Main Street, #708, Royal Oak, MI 48067;

7.     615-617 S. Washington, Royal Oak, MI 48067;

8.     619 S. Washington, Royal Oak, MI 48067;

9.     621 S. Washington, Royal Oak, MI 48067;

10.    623 S. Washington, Royal Oak, MI 48067;

11.    27715 Grant Street, St. Clair Shores, MI 48081;

12.    22480 Kelly Road, Eastpointe, MI 48021;

13.    27379 Van Dyke, Warren, MI 48093;

14.    28000 Van Dyke, Warren, MI 48093;

15.    27423 Van Dyke, Warren, MI 48093;

16.    27253 Van Dyke, Warren, MI 48093;

17.    27333 Van Dyke, Warren, MI 48093;

18.    700-704 S. Washington, Royal Oak, MI 48067;

19.    27402 Seyburn, Warren, MI 48092;

20.    27414 Seyburn, Warren, MI 48092;

21.    27426 Seyburn, Warren, MI 48092;

22.    27438 Seyburn, Warren, MI 48092;

23.    27330 Seyburn Ave., Warren, MI 48092;

24.    27342 Seyburn Ave, Warren, MI 48092.

149.    Dr. Bothra used these funds to pay for the purchase, maintenance, property taxes, and/or utilities for the real properties.

150.    Dr. Bothra generated income from the Defendant Real Properties by leasing them out. He would either act as the landlord himself through Kaiser Real Estate, a business he owned, or through a third party property manager.

151.    The Defendant Real Properties constitute: (i) proceeds of health care fraud and a conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349, respectively, and/or (ii) proceeds obtained, directly or indirectly, and/or used or intended to be used in any manner or part to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841 and/or 846.

152.    Dr. Bothra used proceeds of the health care fraud and drug diversion scheme and funds involved in money laundering to pay for the purchase, maintenance, property taxes, and/or utilities for each of the Defendant Real Properties in order to conceal or disguise the nature, source, location, ownership, and control of the criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and any legitimate funds in the account acted to conceal and disguise the nature, source, location, ownership, and control of the criminal proceeds, making the full

amount of the funds in the account subject to forfeiture as "involved in" the money laundering.

## CLAIMS FOR RELIEF

153.   Plaintiff re-alleges and incorporates by reference the prior allegations contained herein.

154.   The Defendants *in rem* are forfeitable to the United States of America pursuant to:

   a.   Title 18, United States Code Section 981(a)(1)(A) as property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Sections 1956 and 1957, or any property traceable to such property;

   b.   Title 18, United States Code, Section 981(a)(1)(C) as proceeds and/or are property traceable to the proceeds of illegal activity, specifically Health Care Fraud, in violation of Title 18, United States Code, Section 1347 and/or Health Care Fraud Conspiracy, in violation of Title 18, United States Code, Section 1349; and/or,

   c.   Title 21, United States Code, Section 881(a) as money, negotiable instruments, securities, and/or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Title 21, United States Code, Sections

841 and 846, and/or all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any such violation.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury in this case.

## CONCLUSION AND RELIEF

Plaintiff respectfully requests that a warrant for arrest of the Defendants *in rem* be issued; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment be entered declaring the Defendants *in rem* to be condemned and forfeited to the United States for disposition according to law; and that the United States be granted such other further relief as this Court may deem just and proper together with costs and disbursements of this action.

Date: December 3, 2019          Respectfully submitted,
                                Matthew Schneider
                                United States Attorney


                                s/Shankar Ramamurthy
                                Shankar Ramamurthy
                                Assistant United States Attorneys
                                211 W. Fort St., Ste. 2001
                                Detroit, MI 48226
                                (313) 226-9562
                                Shankar.Ramamurthy@usdoj.gov
                                (IL 6306790)

## **VERIFICATION**

I, Mark Kroger, state that I am a Special Agent of the Federal Bureau of Investigation ("FBI").  I have read the foregoing Complaint for Forfeiture, and declare under penalty of perjury that the facts contained therein are true and correct to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement agents.

_____
Special Agent Mark Kroger
Special Agent
Federal Bureau of Investigation

Date:   November 27, 2019